All right, the next case is number 06-1025 Nonin Medical v. BCI Incorporated. Mr. Padmanabhan, and you don't need to repeat what you've told us, but concentrate on the specific point that applies to this defendant. Your Honor, in this regard, the district court made two significant errors. The first one I've already discussed, which is that the pivot means should have been construed as a means plus function term. The second significant error the court made is that the court failed to consider the entire structure of the accused product, which is called a digit in this case, and that error caused the court not to focus on the entire structure to decide if it satisfied the pivot means limitation as the court had construed it. In terms of going back to the construction of the pivot means, I just want to mention one thing from the last argument that I had instead. In terms of coal, and this addresses, I think, Judge Friedman's question, in that case the court noted that there was a prolific use of the term means, and yet continued to do the analysis that the court had laid out in coal, which is to look to see if there's sufficient structure, and in particular location and extent. And with regard to pivot means, much like perforation means in that case, there is structure, perforation can note structure, pivot can note structure, in this case even BCI's own patent, which describes in part the two patents at issue here, calls it that it has pivots, and they understood it to have structure. Also, in this case the accused device is the upper and lower finger clips are not connected by pivoting, they're housed separately. I can envision. In this case there's a spurt, which is I think yellow in color, there's a spurt with a top finger pad and a cap, and then there's a bottom finger pad, that's the second housing, and there's four little springs holding the bottom housing, which allows the finger to enter the gap. That's in part, that's right, the other part that they did, and this is the modification they had to make from what's in the patent, is they had to change, they had to modify the channels that were in the skirt and open them up a little to allow it to pivot. That was something that in the patented design... Now to pivot, how is it pivoting? So there's... Is there an axis about which something is turning? Yes, there is a back rail, and what happens is when you push your finger in, this top finger pad stays fixed, and the bottom finger pad... Probably wobbles a little, was the word used to open? That wobbles is there, or the district court actually, for purposes of this motion, found that it pivots. In fact, there's a footnote where she says, where the district court specifically says, there's undivided testimony that there is, it is pivoting. What's the axis about which it is pivoting? There's a back rail, and it opens up like a jaw. So it's the back rail, the edge of the skirt, it's right at that point that there's an, it opens, and then it separates to become more parallel. So it opens like this when you put your finger in, and it separates. And so there is a pivoting that happens. The structure that the district court didn't consider was, the district court focused... But there's not a single fixed axis, maybe, is the way to say it, is there? There's not a single fixed, but the claim doesn't require... You're saying that there's a conceptual axis because when it enters, there has to be an opening motion, which creates somewhat of an axis, quickly destroyed when you finish inserting the finger, and it separates the two clips, right? But the patent clearly describes both the embodiment, where you pivot, and you pivot, and separate. And in this case, they had to change their design, which they were trying to make a patented design, they had to change their design to allow it to pivot, which is a fact that the district court, it's not the embodiment that the district court considered. They made that change specifically to be able to enable that device to work. So as they modify that device, they had to change the channels in the skirt so that it allowed the device to pivot first, to allow the finger to come in, and then it separate, which is an embodiment that's specifically disclosed in the patent. It allows you to have a structure that allows you to pivot and separate. And that is that is something the district court just did not do. Where's that language in the patent? It's in column 3, Your Honor, of the 052 patent. 052, column 3, that's the first full paragraph here. It would be in Figures 1 through 4, or is it something else? I'm sorry. Yep, that's where I was at. 17? You can see it says, spring 16 allows the two separate. So there's a pivot or separate, and then pivot and separate. Well, if it's separating, how is it pivoting? How does it become a pivot function then? Well, the claim requires that there initially be a pivot, and then after that, it's allowed to separate. In this, in the patented case, there's a tab. I think it's best shown in Figure 5. Okay, just a second. There's a tab that allows it to pivot and then separate as the finger goes in. The tab just slides up. The tab would be number 32, I think. I see, though, that the key is that you've got this U-shaped spring, and it's that U-shaped spring that's allowing the separation. Yeah, it's allowing the separation. That's a little different from the structure of the Accused device, isn't it? Where there is no spring. There are springs. At the bottom, but they're not springs that connect the upper and lower housing. They do connect the upper and lower housing. The springs connect from the lower finger pad, which is the lower housing, to the upper finger pad, which is fixed with the skirt, which is the upper housing. But the four springs are in the base of the lower housing of the clip. How do those connect to the upper housing? They press the lower housing up into the upper housing, but there's no connection of the spring to the upper housing, is there? I think the expert reports pretty clearly state that there is a connection. What would the connection between the springs and the upper housing be? It's between the upper fixed finger pad and the lower finger pad. Okay, pad to pad. That's different from spring to pad, isn't it? Which is the question I ask. It's different from pad to pad, but it's with the springs. I understand. I understand your point. And the upper pad is part of the fixed housing. I understand your point. And going back to unit dynamics, the only other point I want to make is there's language surrounding, much like with the case in coal, your case in environmental and unit dynamics case suggested, there's plain language surrounding pivot beams that gives you both location and extent. It tells you specifically that the pivot is for interconnecting the two housings, and it tells you the location because it's going to be between the two housings where the pivot structure is going to be. And so it's what interconnects the housing and gives you the location. So under your existing case law, it should be also construed as a non-1126 limitation. Okay, good. You have some rebuttal time. Mr. Roth? Good morning, Your Honors. I would like to talk briefly about pivot beams to make a few points in response to arguments made as well as things in the reply brief. Number one, the cases that they cite in arguing that this is not a means plus function claim are inapposite. In each one of those cases, the claim language being construed did not include the word means. As this court knows, once you have the word means, there is a presumption. Well, the preparation means was there in coal. It was, and spring means was in the other case. And what the court found was that spring means by itself didn't connote structure sufficient to take you away from the presumption. The same thing is true here with pivot means. Pivot means doesn't connote sufficient structure to take you away from the means plus function. The reason is because you look to the claim language, which is not structural, but is functional. You look to the specification, which Your Honor noted is all functional, not structural. Are you conceding that if 1126 does not apply, that there would be infringement under the doctrine of equivalence? No. I'm really trying to understand that a very technical, difficult argument as to at which point it blends from a 1126 equivalency to the doctrine of equivalence. And if, in fact, your argument is that there's no infringement on either theory, then this line that you're asking us to draw between our cases, which have gone different ways on different facts, may not be quite as compelling. Well, I do think there is a difference in the way the analysis works out in terms of what would be considered. I don't know that the result of the analysis would be any different. But here the means plus function limitation does exist because the presumption is not overcome. I'm trying to understand if your defense depends on our finding whether or not 1126 applies, then we can concentrate on that. It does not depend on it. We would have additional defenses. But it is the point that's relevant to the lower court's analysis. So we believe that this case is different from Coles and Enviroco. And it's different because the claim language doesn't include information about structures and additional details. There isn't any of that in the claim language. And therefore, it's not like Coles and Enviroco. It instead is like the other case, the name of which escaped me. Pivot is quite specific. It doesn't say, for instance, connecting means or something. If there are words more broad than pivot, it says pivot. That has a very specific mechanical meaning. It says pivot means. It doesn't say, as Judge Friedman noted, a pivot. And the pivot means... But it says a pivot means. I mean, it's suggesting that if the word means were there, it would be the noun pivot, something that rotates around an axis. But, Your Honor, the word means is there. And under the court's law, that creates a presumption that this is means plus function language. Under that presumption, you have to look elsewhere to see if it's overcome. And here there is no overcoming of it. There is no structure. For example, they mentioned that there was structure incorporated by amendment. That is not the case. If you look at that amendment, it's at page 23 of our brief. It has nothing to do with pivoting or pivot means or pivot structure. It has entirely to do with one and two housings. But 112.6 by definition aims you to the specification. So it doesn't get incorporated by amendment in any case. Right. And my point is that that didn't incorporate any structure into this. And when you look for structure in the claim, it is not there. You have to do the 112.6 analysis to find out what is being referred to. And when you go to the specification, you do find the corresponding structure. And it is, as the district court identified it, the spring, the tabs, and the index. And equivalence there. And equivalence there. In this case, there absolutely is not the equivalence. And we know that from going through the way analysis of the function way result. Why not? The spring 16 allows the housings to pivot and or separate relative to one another. Why aren't you separating? And the springs are allowing that separation. And therefore, why isn't the specification structure, even if we're bound by that, literally met by your device? It is not literally met because the identical structure is not there. The U-shaped spring is what's required. And that particular U-shaped spring is depicted in the figures of the patent. The springs in the digit are spiral helical springs like you would find in a pen. The springs are not identical no matter what they say. Of course, but it's not a U-shaped spring is not in the claim. When you say it's what's required, the 112.6, the very liberal view of equivalency. Right. Assuming it's a 112.6 means plus function claim. Well, that's your position, right? It is, and I believe that is correct. The question would then become, is the structure identical? Absolutely not. Then we have to ask about equivalence. Is it the equivalent structure? The spring is not the equivalent structure. In the patent, the spring performs a number of functions. It performs the pivoting function. It performs the connecting function. And it performs the relatively gripping function. The springs in the digit don't perform those functions in the same way. Why don't they? Because you were talking about the springs and how they work. What we have are four springs on which a lower finger grip float. It is not a pivot around the spring. It is essentially parallel motion. Why doesn't it have the effect of causing pivoting around the back of the connecting between the upper and lower portions of the clip? The motion when you stick your finger into the device, you stick it into the area. It opens, I suppose, creating a pivot in the back of the opening. Your Honor, what happens when you stick your finger is, almost instantaneously it drops down parallel. And what they are talking about is that moment in time where you put your finger in part way and you haven't pushed it in the rest and it's slightly out of kilter. And I emphasize slightly because the degree out of being absolutely parallel is between 3.9 and 6.7 degrees. It is minuscule and it goes away. Under the decisions, for example, Ishida, they talk about a pivoting structure or pivoting language in a clamp. And then they talk about how the rotation is not uniform. This is not uniform rotation. There is no single axis. And their experts said that a single axis is what is required and is described in the patent. There is no single axis here. So the spring in the way it is functioning in connection with the movement of the lower finger grip is different. It also doesn't interconnect. As you see in the patent, the spring is supposed to interconnect the two housings and they emphasize that you can take the spring off to open up the two housings for cleaning. Our springs are in turn. They don't perform that interconnecting function in that way where you can remove them and open it for cleaning. The only way you can get at them is to break the device. And if you have to break the device to open it to get at the spring, it, in my view, is clearly a different way in which those springs are functioning on the interconnecting. So pivoting is different. Interconnecting is different. Releaseably gripping is also different. Don't we have a problem here, though? All of those arguments are factual, aren't they? No, they're not factual. There is no dispute about a number of things. Their expert said that there is no U-shaped spring. Their expert said that pivoting requires a single axis. There is no single axis. There is a connection between the upper and lower clips facilitated by the springs. Is that connection, as the claim says, interconnected by a pivot means? The pivot means are the springs and the connected by. The spring doesn't connect to the upper housing, but it forces the lower housing up into a connection. Why isn't that sufficient? Because that's not what the patent requires. The patent requires the spring 16 to perform the function. But the patent says separate or pivot. And in the patent, exactly the same structure is described for the pivoting and the separating. There's spring 16 in the tabs and indents. There's no different structure. So for the pivoting and separating or the pivoting or separating, you would still be looking for the springs that are described in the tabs and indents, and they're not there. What holds the two pieces together is a plastic skirt between the upper finger grip and the lower finger grip. The springs don't hold it together. If you took the springs out of the digit, the thing would still be held together. The finger grip on top of the finger. But if you took the springs out, it wouldn't hold the finger, would it? It wouldn't be attached to the finger. It might not fold it, and it might not properly function because you wouldn't have the finger maybe in the right place. Well, let me, see, one thing that bothers me a little bit. I could understand your argument if all that happened when you put the finger in is the top went up or the bottom went down. But as I understand it, there is some play, some slight pivoting, which you call wobbling, so that it's no longer parallel, the two are no longer parallel. One is at a slight angle, isn't it? Yes, because you cannot make a device in the real world with perfect tolerances or clearances. There has to be a little bit of room between the side grips. You're not saying this is a matter of tolerances or clearances. It's a change in shape, is it not, in order to accommodate the finger? What I'm saying is the wobble that exists is a function of two things. First, the fact that you do not have a U-shaped spring, but have four helical springs, so you get independent suspension with the lower finger grip. And no axis. And secondly, it's a function of the fact that these are made out of plastic, and you have to have a little bit of room between the rail that, contrary to what you were told, is supposed to keep it as absolutely parallel as possible. Do you have one of your devices? Yes. This is the device that was used by our expert. This one was used as a deposition exhibit. I think they're both accurate, slightly different colors. Can you hand it to the clerk? Sure. Is there anything that you want to show us before you still have it? You've got another one. When you insert that, you just put your finger in. You don't have to press down and open it. It doesn't open. The springs are constant. You don't push on this to release the springs or overcome their pressure. The spring pressure is constant. You stick your finger in. But you put your finger in, and it rises more in the front than on the back because it's pivoting. No, because this is actually at an angle, and when you stick your finger in, once you get it stuck in, it is essentially parallel. It may be off a degree or two, but it is essentially parallel. It is not pivoting within the meaning of the patent. It isn't a pinch open around a fixed axis and then closed. You stick your finger in, and it comes down. It's quite clear. A finger is not a homogeneous shape either, so it accommodates the shape of the finger. Right. A finger is essentially a wedge shape, and the behavior of the four springs depends upon a bunch of variables, including the size of the finger, the shape of the finger. If you've worked, your fingers are generally square and things like that. But the bottom line of this is when you stick your finger in, the bottom moves down on the four helical springs and does so in essentially a uniform way. I wanted to touch on the claim differentiation argument that was made by the other side. Claim differentiation does not apply here. Latent is directly on point. All we have here is a dependent claim that incorporates language that is the corresponding structure. Latent says when you do that, that doesn't in any way change the scope or the meaning of the independent claim. You can't essentially get around 112.6 analysis by simply incorporating the structure in the dependent claim. That is very different than Wenger, which is the case they cite. In Wenger, the issue was a term that the court found was misconstrued. The term was circulating error, and it was construed to be recirculating error. Recirculating error was a different function, and it appeared in a different dependent claim. Here, we don't have any separate functions in independent and dependent claims. All we have is what happened in Latent, the incorporation of the corresponding structure into a dependent claim, and that doesn't affect in any way the analysis of the corresponding structure. Don't you admit that you pivot? No. What does the district court say in footnote 4 of its opinion? We, for purposes of the summary judgment motion, Your Honor, we were moving for summary judgment. We could fight the issue of whether their expert had it right about the amounts of motion, whether it was or wasn't pivoting, but if we did that, it's not summary judgment. It's a material factual dispute. So for purposes of summary judgment, we accepted. So how can you stand here and argue that it's not pivoting? Because the way you determine whether it is pivot means and pivoting within the language of the patent is you look at the way in which the springs, the tabs, and the indents perform the function. When you look at that, even accepting their statement that there's a 3.9 to 6.7 movement, it doesn't meet the requirements. It is substantially different in the way it works on interconnecting, on pivoting, and on releasing. But for purposes of the motion before us, you did admit you pivot from 3.9 to 6.7 degrees. Sure. For purposes of this motion. And that's what's before us. And that is what's... So as far as we're concerned in deciding this appeal, don't we have to accept what you said in the dispute? You can accept that there was a 3.9 to 6.7 variance. That is not the same as that being pivoting within the meaning of the patent. And indeed, if you look at the court below's opinion at A7, the court says that the manner in which we describe the movements is apt, that it is a wobble, because it is summary judgment... Aptly described as wobbling. Right. And the wobbling, this 3.6... The wobble is just a little pivoting? No, I think wobbling is independent motion, much like if you had a mattress that was a spring mattress. I don't know if you've seen the commercials where somebody jumps on a spring mattress and dumps over a glass of wine, jumps on some other mattress, and it doesn't tip over. That is what's going on here. You jump on the corner of your mattress, it goes down a little bit, but that isn't pivoting. That isn't even pivoting if you were to assume a pin around which there is rotation. Okay, we have the argument. Thank you, Mr. Wright. Okay, Mr. Padmanabhan, you have some rebuttal time. The district court says, in light of this evidence, no reasonable fact finder conclude that the digit pivots in substantially the same way. Your Honor, that would be, in part, that's a... She's either adding additional limitations to the claim by looking at both rotation and requiring both... She's applying exactly the right law in exactly the right way and finding against you, right? But she's making factual decisions as to whether equivalence applies or not, and that should be something left for the jury to do. No, she says no reasonable fact finder could conclude. It's just so different. There's no interconnection between the springs and the upper housing. A pivot is more a wobble than a pivot. Okay, in terms of pivot, for purposes of this motion, I mean, they did agree that it pivots, and so they didn't challenge that down below. In terms of the wobble, it's the same argument saying they're trying to get around that admission that they pivoted. In terms of her analysis, she either added additional limitations by requiring a location for the pivot. In ours, in their product, there is an axis for the pivoting. It just floats, but it's the x-axis across the back, wherever the pivot line is, that's where the axis is going to be. Yeah, but she goes on to say, unlike the patented device, when the digit pivots, only the lower housing moves. There's no axis. There's only movement of one of the two finger clips. But that is not a requirement that's in any of the claims. That's not a requirement that's in the specification. That's not a requirement that's in any claim language. But pivot is in the claim, and pivot requires an axis. She says no reasonable facts finder could conclude that these differences are the same way or are insubstantial. But there is actually expert evidence and detailed expert reports in the record that go the other way that should be left for a fact finder to decide if those are equivalent or not. So you basically are challenging that factual determination, aren't you? Actually, it's either going to be a factual determination that she should not have made on summary judgment, or she added additional limitations to her claim construction by requiring specific location for the pivoting structure or requiring both bodies to move as part of being a pivoting structure, which neither one of those requirements are in the claim. What was the point of novelty in this invention? There had been finger clips before. There had been light sensors before. What gives you this? You just put them together, right? Put the light sensor into the finger clip? Actually, it's to put all the electronics right into the finger clip. That's just what I said, yeah. What they finally did is they had clips, but they finally put the electronics into the clip. Exactly. Thanks. Okay, thank you. Now, we have the exhibits, and we assume that they were all appropriately introduced into evidence or before the district court. Does anybody object to our retaining these for a while? We don't object to retaining them for a while. We're going to get them back, and we'll need instructions on how to do that. Okay, we'll figure that out and get them back either before or at the time of our decision. Okay, thank you all. The case is taken into submission.